**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2494-22

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

ALI BASS,
a/k/a ALIF BASS, LADON BAY,
and MURAD BORNS,

    Defendant-Appellant.

_____

Submitted January 16, 2025 – Decided January 23, 2025

Before Judges Mawla and Walcott-Henderson.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment No. 11-11-2085.

Jennifer Nicole Sellitti, Public Defender, attorney for appellant (Louis H. Miron, Designated Counsel, on the brief).

Theodore N. Stephens, II, Essex County Prosecutor, attorney for respondent (Hannah Faye Kurt, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Ali Bass appeals from a January 27, 2023 order denying his petition for post-conviction relief (PCR) following an evidentiary hearing. We affirm.

In a prior appeal, affirming defendant's convictions and sentence, we summarized the salient facts as follows:

> On December 11, 2009, Newark Police Detective Anna Colon was on patrol and observed defendant driving a [Ford Taurus] on Irvine Turner Boulevard. Detective Colon activated her lights and siren to pull over defendant because he was not wearing a seatbelt. Defendant made a quick u-turn and a chase ensued, joined by another vehicle operated by Sergeant Thomas Rowe with Detective Jose V. Torres as its passenger.
>
> Defendant's vehicle crossed the double line into oncoming traffic and collided head-on with another vehicle, causing the other vehicle to become air borne and land on its side. As Detective Colon approached defendant's vehicle, the front passenger, Arsenio Payton, fled from the vehicle. Payton was apprehended by another officer. Detective Colon discovered defendant attempting to push himself into the back seat of the vehicle. Defendant's left leg was broken and wrapped around the driver's seat. He was arrested.
>
> Payton subsequently pled to separate charges. As a part of his plea, he testified he was the passenger of the automobile involved in the chase.
>
> [State v. Bass, No. A-2423-15 (App. Div. Oct. 12, 2017) (slip op. at 1-3).]

Prior to trial, the State filed an in limine motion to redact hearsay from defendant's medical records, namely, statements defendant made to medical personnel that he was in the back seat of the Taurus and asleep at the time of the accident. The trial judge granted the motion, ruling those statements were not subject to the medical records hearsay exception because they had "absolutely no rational[] relation to diagnosis or treatment of any of his injuries. . . . Where [defendant] was sitting is absolutely of no relevance to treating his broken leg and/or to . . . diagnosing and/or detecting this injury." The judge also found the statement did not qualify under the present sense impression or excited utterance hearsay exceptions because they were not made immediately after the accident or within a very brief time between the accident and the statement.

Defendant called Payton as a witness at his trial. Payton contradicted his testimony from his own plea hearing, and now claimed he was the driver of the Taurus and defendant was laying down in the back seat of the car during the incident. He also testified he met with defendant's trial counsel on three separate occasions.

During summation, defense counsel argued Payton was credible and had not been intimidated by defendant or anyone on his behalf. Counsel explained

3

he visited Payton three times because of a letter Payton sent to him claiming that Payton was driving the vehicle. Defense counsel remarked:

> So in any event as result of this letter I go to visit him, which any lawyer would do. And I went to visit him and I saw him approximately three times. Everyone in his right mind would go to see a potential witness and prepare him for what is going to be the testimony in the case. There's nothing wrong with that. I'd do it again tomorrow.

At the beginning of the State's summation, the prosecutor began to remark about defense counsel's visits with Payton. Defense counsel objected, and during the subsequent sidebar the trial judge pointed out to the defense that it had informed the jury about counsel's three visits to Payton and the prosecutor "had a right to comment on that." The prosecutor then told the jury defense counsel had "visited . . . Payton, [with] no investigator, just [defense counsel] . . . not once, not twice, but three times . . . [defense counsel] went there to discuss the case. But you don't need to prep someone three times to tell the truth."

The prosecutor also commented on defendant's injuries as follows:

> [Y]ou hit a pickup truck, and the pickup truck goes up in the air, which means your car doesn't jump up in the air. It hits a complete stop, but it's an inertia, ladies and gentlemen. Do you know what happens? [Defendant] goes forward, and the left that's flexed, not the right leg

4

that's out for the pedal, hits the steering wheel, ladies and gentleman.  That's why he broke his femur.

The trial judge overruled defense counsel's objection to this part of the summation.

The prosecutor continued:

> We have medical records for you to take with you into the jury room, but you'll see, multiple fractures in one spot of the femur, right in the middle.  You'll see the picture[s], you'll see an X-ray where the mark is.  And he messed up his hip also.  And I suspect, ladies and gentlemen, when you hit and you start turning your whole body goes up in the air, who knows where your hip is going to go.
>
> The other injuries . . . identified in the medical records . . . [are not] questionable.  This is what doctors did, they examined him[,] and this is what they found.  They found fluid around his abs, but no injury to any organs.  You know why?  He got hit with an air bag, otherwise he was going through the windshield . . . .

The jury subsequently convicted defendant on second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(6); fourth-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(d); second-degree eluding, N.J.S.A. 2C:29-2(b); and fourth-degree resisting arrest, N.J.S.A. 2C:29-2(a).  It acquitted him of third-degree possession of a weapon, a motor vehicle, with an unlawful purpose, N.J.S.A. 2C:39-4(d).

Among the arguments defendant raised on appeal following his conviction was that the trial judge committed reversible error when he permitted the State to make the "baseless inference" during summation that defense counsel influenced Payton to falsely testify. We rejected this argument, finding the prosecutor was permitted to comment on defense counsel's three visits to Payton because defense counsel had raised the issue during Payton's testimony and summation to bolster Payton's credibility, as defense counsel had argued Payton's testimony during his plea proceeding was perjury. Bass, slip op. at 11-12. We expressly rejected defendant's claim the prosecutor had suggested to the jury that

> defense counsel personally influenced Payton to change his testimony. Payton's credibility was a key issue, and whether he committed perjury or was influenced to change his testimony was a decision for the jury to make. The gravamen of the prosecutor's remark was to explain to the jury the State's view of the facts in evidence.
>
> [Id. at 12-13.]

In December 2020, defendant filed a PCR petition alleging, in pertinent part, ineffective assistance of his defense counsel both at trial and on appeal. He claimed counsel prejudiced the outcome of the case because the multiple visits he paid to Payton were used by the prosecutor "to create the impression that the

defense exerted undue influence on [Payton] to testify falsely that he and not defendant, was the driver of the eluding vehicle on the day of the incident." Defendant argued the prejudice was evident because Payton had testified to the opposite during his plea proceeding. As a result, defense "counsel placed himself in the position of having to defend his actions against the prosecutor's clear implication of witness tampering before the jury and that defendant was unduly prejudiced as a result." Defense counsel was also ineffective because he failed to raise his own ineffectiveness as trial counsel on the appeal and instead only argued prosecutorial misconduct.

Defendant's PCR petition also alleged ineffective assistance of counsel on the appeal because counsel failed to challenge the in limine ruling permitting the State to redact defendant's statements from his medical records. Counsel was ineffective for not raising the fact the prosecutor improperly bolstered the State's theory that defendant was the driver during summation by explaining "how the crash occurred and how that impact injured defendant." Defendant argued this was beyond the ken of the jury and required expert testimony, which the prosecutor was unqualified to provide.

Judge Marysol Rosero conducted the PCR hearing after which she issued a detailed written opinion on January 27, 2023. Defendant's former defense

counsel was the sole witness at the hearing. The judge found counsel credible and noted "[h]is testimony was corroborated by the record and transcripts[] and was not contradicted by any evidence presented to [the] court."

Defense counsel testified he visited Payton after he received Payton's letter because it was his obligation to do so to render effective assistance of counsel under the Sixth Amendment. Counsel was aware of Payton's lengthy criminal record, including that his guilty plea regarding the incident with defendant alleged different facts regarding who was driving the vehicle than those asserted by defendant. Therefore, defense counsel visited Payton to confirm the veracity of the version he claimed in the letter to counsel. Counsel explained he visited Payton three times without an investigator because he was unaware of any requirement that a third-party had to be present and defendant could not afford the expense. Moreover, because counsel had a busy schedule, he visited Payton when time permitted.

Regarding the appeal, counsel explained his "practice" was to focus "on those issues that were actually going to assist in reversing a conviction" and not raise meritless issues. Among the issues counsel determined were meritless was the lack of expert testimony regarding defendant's injuries.

A-2494-22

In addition to recounting the background facts of the case and the relevant portions of the summations, the judge also discussed the "strong evidence against [defendant] in both quantity and quality" adduced by the State. She noted

> the [S]tate established that (1) [defendant] was engaged in a highspeed chase and identified in court by several arresting police officers wherein one of them actually saw him driving without a seatbelt; (2) three of those officers testified and identified the [defendant] as being in the area of [the] driver seat; (3) [defendant] was found with his compound fractured leg wrapped around the driver's seat; (4) [defendant's] injuries showed that it would have been nearly impossible to move into or away from the driver seat; (5) [defendant] was found to have fluid around his abdominal[ muscles,] which is consistent with being thrown forward in the driver's seat.

The judge also stated there was evidence adduced through the testimony of Detectives Colon and Torres regarding the moment of impact, the condition of the vehicle, and defendant's injuries. The detectives' testimony was corroborated by "multiple exhibits admitted into evidence depicting the state of the Ford Taurus [and] . . . the nature and extent of [defendant's] injuries" specifically two medical expert reports and defendant's hospital and medical records. The judge noted the medical expert "opined on the nature and extent

of [defendant's] injuries, and . . . the hospital records reflected the veracity of those opinions."

The judge found defendant did not suffer ineffective assistance of counsel either at trial or on appeal. The judge concluded: it was necessary to meet with Payton and confirm his testimony because he had credibility issues. Any speculation that counsel improperly influenced Payton was eliminated by the fact Payton's trial testimony was consistent with the letter he sent defense counsel prior to their meetings. The record lacked evidence counsel's conduct had prejudiced defendant because the jury acquitted defendant on the third-degree possession of a weapon offense "indicating to the court that the jury fully considered [defense counsel's] arguments and found them persuasive and credible as to at least [that charge]." The judge inferred from the acquittal that defense counsel's credibility was not an issue "but rather that the jury carefully considered the overwhelming evidence the State presented against [defendant] and made a decision based on the same."

Defendant argued that defense counsel's multiple meetings with Payton without a third person present evidenced the ineffective assistance of counsel. His petition likened his case to State v. Dayton, 292 N.J. Super. 76 (App. Div. 1996). There, defense counsel met with the State's witnesses without a third-

party present and obtained signed statements corroborating the defense's version of the case. Id. at 81-82. Afterwards, defense counsel moved to withdraw from the case because they learned the witnesses would testify defense counsel had coerced them into making the statements, and it might become necessary for defense counsel to testify at trial to rebut the State's witnesses. Id. at 82-83.

The trial judge in Dayton denied the withdrawal motion. Id. at 79. On appeal, we reversed the defendant's conviction concluding defense counsel should have been permitted to withdraw. Id. at 83. We questioned why defense counsel would interview witnesses without an investigator or a third-party present, who could then testify for the defense regarding the exculpatory information provided by the State's witnesses rather than make defense counsel a necessary witness. Id. at 86.

Judge Rosero found Dayton inapposite and distinguished it from defendant's case. She noted Payton was the one who contacted defense counsel, whereas in Dayton "defense counsel reached out to the State's witness." Unlike Dayton, defense counsel here had no reason to withdraw as counsel. Further, defense counsel in Dayton was concerned the witness would testify the statement was coerced from them by counsel, whereas here "there was no similar

concern at the time of trial, but a post hoc concern that a jury could infer impropriety from the State's argument in summation."

The judge also noted defendant cited no law for the proposition "that it is ineffective assistance of counsel for an attorney to interview a witness with no third-party present." Defense counsel had posited three valid reasons for not bringing along an investigator. The judge concluded his conduct did "not fall below an objective standard of reasonableness as to render . . . counsel ineffective" because "[a]ttorneys are given a wide latitude of deference when it comes to their trial strategy." Defense counsel had over five decades of experience, and the fact he won a partial acquittal disproved that he "was not functioning as counsel as guaranteed by the Sixth Amendment."

Assuming arguendo, the judge found defense counsel's "decision to meet with . . . Payton and the resulting inferences that flowed at trial" did not demonstrate that the result would have been different. The State had presented evidence of: defendant operating the vehicle; the nature of the crash; defendant's location "in the area of the driver's seat[;]" the fact that defendant's "injuries show[ed] that it would have been nearly impossible to move into or away from the driver['s] seat[;]" and that his injuries were "consistent with being thrown forward in the driver's seat." Defendant "was only able to present a case largely

reliant upon Payton's recantation, which[] based on the totality of the evidence presented could be view by the jury as suspect and untrustworthy."

The judge found that even if defendant had taken an investigator to the meetings with Payton, the investigator's testimony would be inadmissible hearsay because it would be consistent with the letter Payton sent defense counsel. Even if the defense had overcome the hearsay issue, the investigator's corroborative testimony would not overcome the weight of the evidence presented by the State and change the outcome.

The judge reached a similar conclusion regarding defense counsel's failure to argue the alleged impropriety of prosecutor's summation on appeal. She found the omission of the argument was ultimately a strategic decision. Regardless, defendant did not demonstrate the raising of this issue would have led to a different result because "the trial record is replete with evidence from which the prosecutor permissibly asked the jury to draw common sense inferences." The testimony of Detectives Colon and Torres detailed the violent nature of the accident. "[T]here were multiple exhibits brought out over the course of the trial depicting the state of the . . . Taurus, including the deployed airbag inside. . . . [And] there were multiple exhibits . . . that reflected the nature and extent of [defendant's] injuries . . . ."

13

Therefore, "it was permissible for the prosecutor to comment on this evidence at summation. . . . The prosecutor's comments were reasonably related to the scope of th[e] evidence presented." Given the weight of the evidence, the prosecutor's summation was "permissible by law, [and] it cannot be said that the . . . comments rose to the level of 'severe misconduct' that prejudiced [defendant's] right to a fair trial."

Defendant raises the following arguments on appeal:

> I. THE PCR COURT ERRED IN RULING THAT DEFENDANT RECEIVED THE EFFECTIVE ASSISTANCE OF COMPETENT TRIAL COUNSEL WHERE COUNSEL INTERVIEWED THE DEFENDANT'S PRIMARY WITNESS ON MULTIPLE OCCASIONS WITHOUT AN INVESTIGATOR OR OTHER WITNESS PRESENT AND WITHOUT OBTAINING AN AFFIDAVIT, THEREBY UNDERMINING THE CREDIBILITY OF THE WITNESS' TESTIMONY . . . .
>
> II. DEFENDANT'S TRIAL COUNSEL WAS CONSTITUTIONALLY INEFFECTIVE BECAUSE COUNSEL FAILED TO RETAIN A RECONSTRUCTION EXPERT TO SUBSTANTIATE DEFENDANT'S POSITION THAT HE WAS NOT THE DRIVER OF THE VEHICLE. (Not Raised Below) . . . .
>
> III. APPELLANT COUNSEL WAS CONSTITUTIONALLY INEFFECTIVE BECAUSE COUNSEL FAILED TO RAISE ARGUMENTS CONCERNING THE TRIAL COURT'S PERMITTING THE PROSECUTOR TO ARGUE

DURING SUMMATION FACTS NOT IN THE RECORD CONCERNING THE CAUSE OF DEFENDANT'S LEG INJURIES THAT ONLY COULD HAVE BEEN PROPERLY THE SUBJECT OF EXPERT TESTIMONY BUT FOR WHICH NO EXPERT TESTIMONY WAS PROFFER[]ED . . . .

IV. APPELLATE COUNSEL WAS CONSTITUTIONALLY INEFFECTIVE BECAUSE COUNSEL FAILED TO RAISE ARGUMENTS CONCERNING THE TRIAL COURT'S DENYING DEFENDANT'S OBJECTION TO THE STATE'S REDACTING EXCULPATORY STATEMENTS MADE BY DEFENDANT THAT WERE INCLUDED IN DEFENDANT'S MEDICAL RECORDS THAT WERE ADMITTED IN EVIDENCE. (Not Raised Below).

I.

Our review of a PCR claim after a court has held an evidentiary hearing "is necessarily deferential to [the] PCR court's factual findings based on its review of live witness testimony." State v. Nash, 212 N.J. 518, 540 (2013). We should not disturb "the PCR court's findings that are supported by sufficient credible evidence in the record." State v. Pierre, 223 N.J. 560, 576 (2015) (citations omitted). However, we review any legal conclusions of the trial court de novo. Nash, 212 N.J. at 540-41; State v. Harris, 181 N.J. 391, 419 (2004).

When a defendant claims ineffective assistance of counsel, they must show counsel's performance was deficient, and but for those errors, they would

15

not have been convicted. See Strickland v. Washington, 466 U.S. 668, 687 (1984); State v. Fritz, 105 N.J. 42, 52 (1987). This is because there is a strong presumption counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland, 466 U.S. at 690.

To establish a prima facie case under the first Strickland prong, a defendant must show that "counsel's acts or omissions fell 'outside the wide range of professionally competent assistance' considered in light of all the circumstances of the case." State v. Castagna, 187 N.J. 293, 314 (2006) (quoting Strickland, 466 U.S. at 690). Such acts or omissions of counsel must amount to more than mere tactical strategy. State v. Davis, 116 N.J. 341, 357 (1989).

To satisfy the second Strickland prong, a defendant must establish "a reasonable probability that but for . . . counsel's unprofessional errors, [the] result of the proceeding would have been different." Strickland, 466 U.S. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." State v. Arthur, 184 N.J. 307, 319 (2005) (citing Strickland, 466 U.S. at 694).

A defendant is also entitled to effective assistance of appellate counsel, but "appellate counsel does not have a constitutional duty to raise every

nonfrivolous issue requested by the defendant." State v. Morrison, 215 N.J. Super. 540, 549 (App. Div. 1987). Appellate counsel will not be found ineffective for failure to raise a meritless issue or errors an appellate court would deem harmless. See State v. Echols, 199 N.J. 344, 361 (2009). Counsel is not required to raise meritless arguments, and the failure to raise arguments lacking in merit does not constitute ineffective assistance of counsel. State v. Webster, 187 N.J. 254, 257 (2006); see also State v. Worlock, 117 N.J. 596, 625 (1990).

"[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." Strickland, 466 U.S. at 691. Counsel is not ineffective "[m]erely because a trial strategy fails." State v. Bey, 161 N.J. 233, 251 (1999).

II.

Pursuant to these principles, and having reviewed the record, we reject the arguments raised by defendant in points I and III and affirm substantially for the reasons expressed in Judge Rosero's thorough and well-written opinion. We add the following comments regarding the argument in point III.

A-2494-22

Following the summations, the trial judge instructed the jury in accordance with the model charges as follows:

> Regardless of what counsel may have said or I may have said or say in recalling the evidence in this case, it is your recollection of the evidence that must guide you as judges of the facts. Arguments, statements, remarks, openings and summations of counsel, . . . are not evidence and must not be treated by you as evidence.

> Although the attorneys may point out to you what they think is important in this case, you must rely solely on your understanding and recollection of the evidence that was admitted during the course of the trial. Whether or not [defendant] has been proven guilty beyond a reasonable doubt is for you to determine based on all the evidence presented during the course of this trial. Any comments by counsel are not controlling.

"One of the foundations of our jury system is that the jury is presumed to follow the trial court's instructions." State v. Burns, 192 N.J. 312, 335 (2007) (citing State v. Nelson, 155 N.J. 487, 526 (1998)). Based on our review of the record, we have no reason to doubt the jury heeded the trial judge's instructions. For these reasons as well, we reject defendant's assertion that not raising the arguments regarding the summation on appeal was ineffective assistance of counsel.

"Generally, an appellate court will not consider issues, even constitutional ones, which were not raised below." State v. Galicia, 210 N.J. 364, 383 (2012). Our task on this appeal is to review the PCR court's ruling in view of the record before us. For these reasons, we decline to reach the argument raised by defendant in point II.

We could reach the same conclusion regarding the argument raised in point IV of defendant's brief. However, as we outlined in our recitation of the facts, the record relating to the evidentiary objections defense counsel raised over the redaction of the medical records is developed enough to enable us to consider whether counsel was ineffective for not raising this claim on appeal. The evidentiary issue concerned defendant telling doctors in the hospital after his arrest that he was sleeping in the backseat of the vehicle at the time of the crash. He asserts this was exculpatory evidence and defense counsel violated his due process rights when he failed to challenge the trial judge's ruling excluding the evidence on appeal.

N.J.R.E. 803(c)(1), (2), and (4), exclude from hearsay the following:

> (1) Present Sense Impression. A statement describing or explaining an event or condition, made while or immediately after the declarant perceived it and without opportunity to deliberate or fabricate.

(2) Excited Utterance.  A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition and without opportunity to deliberate or fabricate.

. . . .

(4) Statements for Purposes of Medical Diagnosis or Treatment.  A statement that:

> (A) is made in good faith for purposes of, and is reasonably pertinent to, medical diagnosis or treatment; and

> (B) describes medical history; past or present symptoms or sensations; their inception; or their general cause.

In deciding the in limine motion, the judge correctly found defendant's statements regarding his location in the vehicle following the accident were inadmissible hearsay.  His statements were not admissible under N.J.R.E. 803(c)(4) because "only evidence relevant, strictly relevant, to the diagnosis and treatment of the sustained injury [could] be introduced into evidence."  The judge noted "defendant suffered a broken leg as a result of the accident.  Where he was sitting is absolutely of no relevance to treating his broken leg and/or . . . diagnosing and/or detecting this injury."

The trial judge also correctly found the statements were inadmissible under N.J.R.E. 803(c)(1) and (2) "due to the passage of time."  He noted "[t]he

20

present sense impression exception requires that the defendant make a statement as previously noted, . . . "immediately" . . . after the relevant event or condition."

Citing State ex. rel. J.A., 195 N.J. 324, 338 (2008), the judge found as follows:

> [O]ur Supreme Court utilizing a common sense approach . . . determined that, . . . "immediately after,["] . . . refers to a very brief time between the observation and the statement.
>
> Although the record does not indicate the specific moment when defendant first asserted that he had not been behind the wheel and was asleep, the record does reflect . . . that the incident occurred at approximately 1:45 p.m.; that defendant was arrested at approximately 2:15 p.m.; and that . . . defendant arrived at [the h]ospital at approximately 2:38 p.m. Defendant's statement . . . came after his admission to the hospital, which means that the statement had to have occurred approximately or the earliest, [forty-nine] minutes after the accident. An elapsed time difference . . . of [forty-nine] minutes clearly is not . . . "a very brief time."
> . . . .
>
> Certainly, defendant could have had ample opportunity to deliberate on his way to the hospital; that . . . defendant appears to have responded to questions asked of him by medical personnel additionally negate his contention that his statement should fall under the excited utterance exception to the hearsay rule.

Had this issue been presented to us on appeal, the "[t]raditional rules of appellate review [would] require substantial deference to a trial court's evidentiary rulings." State v. Morton, 155 N.J. 383, 453 (1998). Indeed, a trial

A-2494-22

judge's rulings will be upheld "absent a showing of an abuse of discretion, i.e., there has been a clear error of judgment." State v. Perry, 225 N.J. 222, 233 (2016) (quoting State v. Brown, 170 N.J. 138, 147 (2001)). "An appellate court applying this standard should not substitute its own judgment for that of the trial court, unless 'the trial court's ruling was so wide of the mark that a manifest denial of justice resulted.'" Ibid. (quoting State v. Marrero, 148 N.J. 469, 484 (1997)); see also State v. Fortin, 189 N.J. 579, 597 (2007). Even if there is an abuse of discretion, we "must then determine whether any error found is harmless or requires reversal." State v. Prall, 231 N.J. 567, 581 (2018).

Pursuant to these principles, we conclude the trial judge's evidentiary rulings regarding the statements in the medical reports were unassailable and did not constitute an abuse of discretion. Therefore, even if this argument were presented by defense counsel on appeal, it would not have prevailed. As a result, we conclude counsel did not violate his obligations under the Sixth Amendment for not raising this argument on the appeal.

Finally, to the extent we have not addressed any of defendant's remaining arguments, it is because they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2494-22